IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **SALOME NZEBA KAPEPULA,** : | |
| : | **CIVIL ACTION NO. 22-4741** |
| Plaintiff, : | |
| v. : | |
| : | |
| **CITY OF LANCASTER, et al.,** : | |
| : | |
| Defendants. : | |

**Perez, J.**                                                                                           **November 26, 2024**

### MEMORANDUM

Plaintiff Salome Nzeba Kapepula brings this action against Defendants City of Lancaster, Lancaster Police Department, Officer Derek R. Kanuck, and Officer John Does 1-10 (collectively, "Defendants"), alleging they violated her Fourth Amendment rights and state tort law when arresting her. Pending before the Court is Defendants' motion for summary judgment on the claims that remain—namely, Count I (excessive force), Count II (Fourth Amendment), and Count IV (assault and battery). For the reasons that follow, the Court grants Defendants' motion for summary judgment.

**I.    BACKGROUND**

Most of the relevant facts were captured on body camera footage. On October 2, 2021, officers responded to a 911 call that Plaintiff was causing a disturbance at 4 S. Franklin Street in Lancaster, Pennsylvania. ECF No. 26-1. The caller indicated that Plaintiff tried to start a fight and was removed from the apartment but actively attempted to reenter. *Id.* Three officers responded to the call, including Defendant Kanuck and Sergeant Damon Greathouse. ECF No. 26-7. Upon arrival, the officers observed Plaintiff on the porch of the apartment with her belongings. ECF No. 26-3 at 00:55. Karen Bitzer, the lessee of the apartment, stood in the doorway with her boyfriend.

*Id.* Sergeant Greathouse asked Plaintiff if she had been drinking, to which Ms. Bitzer replied "yes . . . she has been drinking." *Id.* at 1:11-1:17. Sergeant Greathouse entered the apartment to speak with Ms. Bitzer while Defendant Kanuck remained on the porch with Plaintiff. ECF No. 26-4 at 3:55. During their conversation, Ms. Bitzer explained to Sergeant Greathouse that Plaintiff is her best friend and she recently allowed her to move in with her. ECF No. 26-3 at 4:30-5:06. After a few incidents, she asked Plaintiff to leave and documented this request in a letter she provided the officers. *Id.* at 4:30-5:06, 00:59-1:03. Sergeant Greathouse asked Ms. Bitzer if she was "willing to be the victim of trespass." ECF No. 26-3 at 7:05-7:13. She responded "yes." *Id.* As their conversation ended, Ms. Bitzer handed Plaintiff's purse to Sergeant Greathouse and asked him to give it to her. *Id.* at 8:36. He searched through it before exiting the apartment. *Id.* at 8:36-9:30.

Shortly after returning to the porch, Sergeant Greathouse grabbed Plaintiff's right wrist and placed a handcuff on it, to which Plaintiff responded, "why are you grabbing me?" ECF No. 26-4 at 10:18-10:26. Defendant Kanuck then quickly grabbed Plaintiff's left arm and bent it behind her back. *Id.* at 10:26. This time she yelled, "why are you grabbing me?!" *Id.* Defendant Kanuck held Plaintiff's left arm in a bent position behind her back as Sergeant Greathouse struggled to place her right arm behind her back. *Id.* at 10:26-10:45. Simultaneously, Plaintiff is seen resisting the pressure Sergeant Greathouse applied to her right arm while also bending her knees. *Id.* Defendant Kanuck maintained control over Plaintiff's left arm throughout this maneuvering. *Id.* Plaintiff then yelled, "ow! that's my arm! that's my arm!" *Id.* at 10:35-10:42. A third officer began helping Defendant Kanuck and Sergeant Greathouse place Plaintiff's left wrist in the handcuff. ECF No. 26-7 at 6:48. Seconds later, the officers had placed both wrists in handcuffs. *Id.* at 6:58. This entire interaction lasted just over 30 seconds. ECF No. 26-4 at 10:18-10:53.

After placing Plaintiff in a police vehicle, Defendant Kanuck told Sergeant Greathouse that he heard a "pop" noise as he placed her left arm behind her back. *Id.* at 12:32-12:40. Sergeant Greathouse suspected her arm was either fractured or dislocated. *Id.* Plaintiff was transported directly to the hospital. *Id.* It was later confirmed that her left arm was fractured.

Plaintiff was charged with defiant trespass in violation of 18 Pa. Cons. Stat. Ann. § 3503(b)(1) and public drunkenness in violation of 18 Pa. Cons. Stat. Ann. § 5505. The charges were ultimately dismissed. Now Plaintiff brings this action pursuant to 42 U.S.C. § 1983, alleging Defendants engaged in excessive force, an unreasonable search and seizure, and assault and battery.

## II.   LEGAL STANDARD

Summary judgment is properly granted when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Facts are material if they "might affect the outcome of the suit under the governing law." *Physicians Healthsource, Inc. v. Cephalon, Inc., et al.*, 954 F.3d 615, 618 (3d Cir. 2020). A dispute as to those facts "is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* In support of their respective positions, parties must cite to specific parts of the record or show that the evidence cited fails to "establish the absence or presence of a genuine dispute." Fed. R. Civ. P. 56(c)(1). In reviewing the evidence, this Court "view[s] all the facts in the light most favorable to the nonmoving party and draw all inferences in that party's favor." *Physicians Healthsource,* 954 F.3d at 618.

## III.  DISCUSSION

As an initial matter, the Court acknowledges that Plaintiff withdrew her claim pursuant to *Monell v. Dept. of Social Servs.,* 436 U.S. 658 (1978),[1] along with her claims against Defendant Officer John Does 1-10. *See* ECF 31 at 9. As such, only the claims against Defendant Kanuck remain. Defendants argue that Defendant Kanuck is entitled to qualified immunity, mandating dismissal of the claims against him as well. The Court agrees.

"Qualified immunity attaches when an official's conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *White v. Pauly,* 580 U.S. 73, 78–79 (2017) (quoting *Mullenix v. Luna*, 577 U.S. 7, 11 (2015)). Therefore, the Court must assess (1) whether Defendant Kanuck violated a constitutional right, and (2) whether the right was clearly established. Plaintiff alleges that Defendant Kanuck used excessive force when arresting her, lacked probable cause for the arrest, and conducted an unreasonable search. We begin with the excessive force claim.

Where an "excessive force claim arises in the context of an arrest or investigatory stop of a free citizen, it is most properly characterized as one invoking the protections of the Fourth Amendment." *Graham v. Connor*, 490 U.S. 386, 395 (1989). The Fourth Amendment's prohibition against unreasonable seizures "depends not only on *when* [the seizure] is made, but also on *how* it is carried out." *Id.* As such, assessing the reasonableness of allegedly excessive force requires consideration of the totality of the circumstances surrounding the seizure, "including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* at 396. Courts also weigh "the physical injury to the plaintiff, 'the possibility that the persons subject

---

[1] Municipalities and other government units "can be sued directly under § 1983 for monetary, declaratory, or injunctive relief." *Monell*, 436 U.S. at 690. These claims are commonly referred to as *Monell* claims.

to the police action are themselves violent or dangerous, the duration of the action, whether the action takes place in the context of effecting an arrest, the possibility that the suspect may be armed, and the number of persons with whom the police officers must contend at one time.'" *El v. City of Pittsburgh*, 975 F.3d 327, 326 (3d Cir. 2020) (quoting *Sharrar v. Felsing*, 128 F.3d 810, 822 (3d Cir. 1997)).

The Court finds that the potential crimes of trespass and public drunkenness are not severe. Plaintiff is five feet tall, 110 pounds, had no weapons on her person, and did not pose any immediate threat to the officers or anyone else at the time of arrest. ECF No. 26-11; *see generally* ECF No. 26-3. Once it was clear she was under arrest, Plaintiff did not voluntarily place her hands behind her back. ECF No. 26-4 at 10:24. It took officers approximately 30 seconds to place Plaintiff in handcuffs, and during the process, Plaintiff screamed "ow! that's my arm! that's my arm!" *Id*. at 10:35. Plaintiff was outnumbered by the officers three to one. ECF No. 26-7 at 6:45. It was later determined that her left arm was fractured. ECF No. 26-11. These facts and the body camera footage underscore that the officers could have de-escalated this entire situation. However, notwithstanding this unfortunate reality, the evidence precludes a finding that Defendant Kanuck used excessive force. Plaintiff resisted arrest, and rather than acquiesce to Plaintiff's resistance, Defendant Kanuck continued to bend Plaintiff's arm behind her back so that Sergeant Greathouse could place the handcuffs on her. The Supreme Court has long recognized that "the right to make an arrest . . . necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Graham*, 490 U.S. at 396. The body camera footage bears out that Defendant Kanuck did not use excessive force when arresting Plaintiff as a matter of law. Consequently, Plaintiff's assault and battery claim fails as well. *Boyden v. Twp. of Upper Darby*, 5 F. Supp. 3d

731, 744 (E.D. Pa. 2014) (explaining that a claim for excessive force is a claim for assault and battery).

Plaintiff also asserts that Defendant Kanuck violated her Fourth Amendment rights by arresting her without probable cause. "Probable cause exists whenever reasonably trustworthy information or circumstances within a police officer's knowledge are sufficient to warrant a person of reasonable caution to conclude that an offense has been committed by the person being arrested." *Telzer v. Borough of Englewood Cliffs*, 783 F. App'x 253, 255 (3d Cir. 2019) (internal quotation marks omitted). The probable cause analysis is based on the facts and information known to the officer at the time of arrest. *See Wright v. City of Philadelphia*, 409 F.3d 595, 602 (3d Cir. 2005).

To assess whether an arrest was justified by probable cause, courts must examine the elements of the crimes at issue. *Id.* In Pennsylvania, a person commits defiant trespass when "knowing that he is not licensed or privileged to do so, he enters or remains in any place as to which notice against trespass is given by actual communication to the actor." 18 Pa. Cons. Stat. Ann. § 3503(b)(1)(i). Here, officers responded to a 911 call that Plaintiff was trying to fight with the caller, the caller was able to get her outside the apartment, and Plaintiff was attempting to reenter. ECF 26-1. Shortly after the officers' arrival, Ms. Bitzer provided the officers a copy of a letter stating that Plaintiff could no longer stay at the apartment, effective immediately. ECF No. 26-3 at 1:01; ECF No. 26-4 at 1:55. Ms. Bitzer further explained to Sergeant Greathouse that she allowed Plaintiff to stay there for just over a week but recently asked her to leave. ECF No. 26-3 at 4:35-6:30. Plaintiff did not deny that she was asked to leave. From the time the officers arrived until her arrest, Plaintiff remained on the porch of the apartment. Even when viewing the facts in the light most favorable to Plaintiff, the totality of the circumstances show that Defendant Kanuck

had a reasonable belief that Plaintiff committed the crime of defiant trespass. It is immaterial that the charges against Plaintiff were later dismissed. *Wright*, 409 F.3d at 602 ("[I]t is irrelevant to the probable cause analysis . . . whether a person is later acquitted of the crime for which she or he was arrested.").

Finally, to the extent Plaintiff asserts that Defendant Kanuck engaged in an unreasonable search, the Court finds that there is no evidence that Defendant Kanuck conducted *any* search. The body camera footage shows it was Sergeant Greathouse—an officer not named as a defendant in this action—who conducted a warrantless search of Plaintiff's purse without her consent. ECF No. 26-3 at 8:35. Because Plaintiff's counsel did not name Sergeant Greathouse as a defendant, Plaintiff is left without redress for this intrusion on her right to privacy. Indeed, rather than add Sergeant Greathouse as a defendant post-discovery, Plaintiff *chose* to withdraw all claims against Officer John Does 1-10. This poor tactical decision eliminated the only remaining path to Plaintiff establishing a Fourth Amendment violation. As such, the Fourth Amendment claims fail as a matter of law.

### IV.   CONCLUSION

Plaintiff's lack of constitutional violation not only insulates Defendant Kanuck from liability under the qualified immunity doctrine, but it also independently mandates dismissal of her claims. For these reasons, the Court grants Defendants' motion for summary judgment. An appropriate order follows.